JAMES MOORE, Respondent, *v.* THE ERIE RAILWAY COMPANY, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, MARCH, 1872.)

If a freshet floats the wood of different owners into a river where the property of one is mingled with and undistinguishable from that of the other, the owners become tenants in common.

And if one owner gather and take possession of the whole, he is not liable for conversion, but he holds it subject to the other's right to take his portion, and is entitled to compensation for his labor.

So held where the plaintiff had piled his wood before the freshet on defendant's premises.

In trover for his wood, by the plaintiff, one of the owners, against the defendant, the other owner, who had gathered and taken possession of it, evidence of demand upon the defendant's station agent, not shown to

have authority to bind the defendant, and his refusal,—*Held*, inadmissible.

So also is evidence that defendant used the wood, where it does not appear whether sufficient to satisfy the plaintiff's claim was left.

There being no proof of conversion, and the court having charged the jury that the plaintiff, if they found for him, was entitled to interest from the time of conversion,—*Held*, that it was virtually a charge that there was evidence of conversion, and error.

THIS was an appeal from a judgment entered upon a verdict in the County Court. The facts are stated in the opinion.

*John Ganson*, for the appellant.

*Hudson Ansley*, for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J.   This action was commenced before a justice of the peace, of the county of Cattaraugus, to recover the value of a quantity of fire-wood, which it was alleged the defendant had converted to his own use. The defendant denied the complaint, and set up a counter-claim. The court rendered judgment in favor of the plaintiff and against the defendant for the sum of sixty-seven dollars and fifty five cents damages and costs.

The defendant appealed to the County Court; and on the trial in that court it appeared that the plaintiff, in the winter of 1865, drew and piled on the land of the defendant, near one of its stations, fifteen cords of hemlock wood. The defendant had piled near to that of the plaintiff a large quantity of hemlock wood, part of which had been sawed.

In March, 1865, there was a great freshet in the Allegany river, so that it overflowed its banks, and its waters extended to the wood of the plaintiff and defendant and carried it away, lodging part of it in the fields and part in the woods near by.

The wood of the plaintiff and defendant was so intermingled as to be undistinguishable.   .

The defendant caused the whole of the wood to be gathered

and placed in its wood-shed, at an expense of seventy five cents per cord. The wood was worth four dollars to four dollars and fifty cents per cord.

Plaintiff's counsel offered to prove that he told defendant's station agent, at the station near which his wood was piled, that defendant's employes were going to pick up the wood, and he (plaintiff) would like to have his pay for it. This evidence was objected to by defendant's counsel. The objection was overruled, and the evidence offered received.

The court charged the jury that if plaintiff piled his wood in defendant's yard without permission, and it got mingled with defendant's wood without defendant's fault, so that it could not be identified, plaintiff was not entitled to recover.

That if plaintiff's wood floated away and got mingled with defendant's wood, defendant had the right to pick it up and pile it in its wood-shed, and plaintiff could not recover its value until defendant had used the wood, or did some other act converting it.

The court also charged that plaintiff was entitled to interest, if the jury found for the plaintiff, from the time defendant used the wood. To this part of the charge defendant's counsel excepted, on the ground there was no proof that defendant had ever used any part of plaintiff's wood.

The jury found a verdict in favor of the plaintiff for sixty-six dollars and twelve cents.

Judgment was entered for that sum, together with costs, and from that judgment defendant appeals.

The wood of the plaintiff and defendant became intermingled without the fault of either; hence neither lost his right to take the wood if he could identify it. But being indistinguishable the one from the other, they became tenants in common of the wood, each being entitled in the joint property to the number of cords of which he was owner before the confusion of the wood.

Each owner was entitled to collect the wood, and he was entitled to a compensation for his labor for the joint benefit from his co-tenants.

The defendant might appropriate to its use the portion of the wood to which it was entitled, but it was bound to leave for plaintiff a quantity equal to his share; and such user was no conversion of the plaintiff's share of the wood.

But if defendant used the whole, or failed to leave for plaintiff his full share, the defendant was liable for so much as the quantity left fell short of plaintiff's share.

The plaintiff was not bound to wait in order to entitle him to his share until the whole was used or otherwise converted by defendant. He might have demanded his portion of the wood; and if defendant refused to allow him to take it, it would have been liable for the value of the wood.

No demand was made of the company, unless the conversation with the station agent, or the letter to the defendant's wood agent, was equivalent to a demand of the wood.

The conversation with the station agent was wholly incompetent, being wholly immaterial, unless it would be some evidence of a demand and refusal. The jury might have given that effect to the evidence. But it is not shown that the station agent had anything to do with the wood, or any authority to bind defendant in any way in reference to the wood.

The reception of this evidence is fatal to the judgment.

It was proved by plaintiff that he sent a letter to defendant's wood agent in reference to the wood, but received no answer. The agent says he received a letter from plaintiff; but whether it contained a demand for the wood or its value we are not informed. There is, therefore, no proof of a demand of and a refusal by the defendant or any authorized agent.

The only other evidence of a conversion is that of the plaintiff, who testifies that he saw the engineers of the defendant putting wood on to the engines from the sheds in which the wood, of which defendant's formed a part, was piled.

It does not appear but that they left in the shed the whole quantity to which plaintiff was entitled. Until it is shown that this was not done, there is no proof of conversion entitling plaintiff to recover.

The charge, so far as it related to the merits of the action

Moore *v.* Erie Railway Co.

is not excepted to. The portion of it relating to interest is excepted to. But if the allowance of interest was erroneous the judgment need not be reversed, as the defendant could be protected by a modification.

But this part of the charge had, I have no doubt, an important bearing in the minds of the jury on the question of conversion.

The court told the jury the plaintiff was entitled to interest from the time of the conversion. The counsel says, in effect, the jury cannot allow interest because no conversion was proved. This was the fact, yet the court permits the case to go to the jury, thus virtually saying there was evidence before them of conversion.

The court had not given them any instruction as to what constituted a conversion, as applicable to the case proved before them. They were left, therefore, with a very significant intimation from the court that there was evidence which would authorize the jury to find a conversion.

This principle was applied by this court in the case of *Reynolds* v. *The People*, decided at the March term.

The plaintiff in error was indicted for assault and battery with the intent to commit a rape. It appeared on the trial that there was really no force used, that the girl not only made no resistance to the indecent familiarities in which he indulged, but aided him therein. The court was asked to instruct the jury that there was no evidence of any intent to ravish, and there was none that an assault and battery had been committed. The court instructed the jury that they should not convict of the intent to commit the higher offence, but refused to instruct them that they should not convict of the lesser offence.

It was held that this was in effect an intimation equivalent to an instruction that there was evidence which would justify a conviction of assault and battery, and probably operated to induce the verdict. The conviction was for that cause reversed.

The judgment of the County Court is reversed, and a new trial ordered.

Judgment reversed.